# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| LORENZO FOSSELMAN, JR., | ) | 1:07-CV-00812 LJO GSA HC |
| | ) | |
|           Petitioner, | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
|    v. | ) | REGARDING PETITION FOR WRIT OF |
| | ) | HABEAS CORPUS |
| M. S. EVANS, | ) | |
| | ) | |
|           Respondent. | ) | |

Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. This action has been referred to this Court pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72-302.

**BACKGROUND**

Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Stanislaus, following his conviction on September 27, 2002, by jury trial of carjacking (Cal. Penal Code § 215) and reckless driving while evading a peace officer (Cal. Vehicle Code § 2800.2). (LD-1[1].) The jury also found true the allegation that Petitioner had personally used a firearm during the commission of the carjacking (Cal.

---

[1] "LD" refers to the documents lodged by Respondent with his answer.

1  Penal Code § 12022.53(b)). (LD-1.) In a bifurcated action, the superior court found true the
2  allegations that Petitioner had suffered two prior strike convictions within the meaning of
3  California's Three Strikes law (Cal. Penal Code § 667(a)). (LD-1.) On December 11, 2002,
4  Petitioner was sentenced to serve a total indeterminate term of seventy years to life. (LD-1.)
5        Petitioner filed a notice of appeal to the California Court of Appeals, Fifth Appellate District
6  (hereinafter "Fifth DCA"). On April 27, 2004, the Fifth DCA affirmed the judgment. (LD-4.)
7  Petitioner then filed a petition for review in the California Supreme Court. (LD-5.) The California
8  Supreme Court summarily denied review on July 14, 2004. (LD-6.) Petitioner next filed a petition
9  for writ of mandate in the Fifth DCA on March 9, 2006, but the petition was denied on April 4,
10  2006. (LD-19.)
11        Petitioner then filed several petitions for writ of habeas corpus in the state courts, as follows:
12  <u>Stanislaus County Superior Court</u>
    Filed: March 20, 2006;
13      Denied: March 21, 2006;
14  <u>California Court of Appeal, Fifth Appellate District</u>
    Filed: April 27, 2006;
15      Denied: May 18, 2006;
16  <u>California Court of Appeal, Fifth Appellate District</u>
    Filed: July 3, 2006;
17      Denied: July 13, 2006;
18  <u>Stanislaus County Superior Court</u>
    Filed: August 29, 2006;
19      Denied: August 30, 2006;
20  <u>California Court of Appeal, Fifth Appellate District</u>
    Filed: September 28, 2006;
21      Denied: October 5, 2006;
22  <u>California Supreme Court</u>
    Filed: November 21, 2006;
23      Denied: May 16, 2007.
24  (LD 7-18.)
25        On June 4, 2007, Petitioner filed the instant petition for writ of habeas corpus in this Court.
26  The petition raises the following five grounds for relief: 1) "Failure of trial court to adequately
27  inquire into Petitioner's conflict of interest claim was an abuse of discretion violating Petitioner's 6th
28  and 14th Amendment rights protected by the United States Constitution"; 2) "Ineffective assistance of

counsel"; 3) "Petitioner's 1997 plea waiver was unconstitutional and therefore invalid and could not be used to enhance his present sentence to life"; 4) "Petitioner's present sentence of life by use of 1997 prior conviction is a violation of due process and equal protection of the United States Constitution"; 5) "Ineffective assistance of appellate counsel denies Petitioner his 6th and 14th amendment rights guaranteed under the United States Constitution." On June 14, 2007, the Court reviewed the petition and determined that Grounds Three, Four, and part of Five were not cognizable. Accordingly, a Findings and Recommendation was issued which the District Court adopted on August 16, 2007.

Petitioner sought an interlocutory appeal to the Ninth Circuit, but the appeal was denied without prejudice. On November 26, 2007, Respondent filed an answer to the petition. On January 11, 2008, Petitioner filed a traverse to the answer.

## FACTUAL BACKGROUND[2]

On April 14, 2002, at approximately 11:35 p.m., victim Christina Borchelt parked her 1993 Lincoln Mark VIII in front of the 7-11 store located at 505 McHenry Avenue in Modesto, California. Victim April Pena waited in the passenger seat of the running vehicle while Borchelt went into the store to purchase a pack of gum. As Pena waited for Borchelt to return, a subject, later identified as Petitioner, entered the vehicle and sat in the driver's seat. Petitioner pulled a small black revolver from inside his coat and pointed it at Pena stating, "Get out before I pop you." Fearing for her life, Pena exited the vehicle and shut the door. Petitioner fled out of the parking lot in the vehicle and headed south on McHenry Avenue. Pena then entered the store and contacted 9-1-1 for assistance.

Deputy Bejaran of the Stanislaus County Sheriff's Department observed the stolen vehicle driving northbound on Highway 99 near the Pelandale Overpass in Salida, California. The deputy followed the vehicle to the main Ripon exit where the vehicle made a left turn onto westbound East Main Street/Frontage Road. The vehicle made an abrupt right turn onto northbound Prospect Street, increasing its speed to 50-55 m.p.h. Deputy Bejaran pursued the vehicle, activating his patrol unit's emergency equipment; however, the vehicle failed to yield and turned right onto eastbound Ridge

---

[2] As the opinion of the Fifth DCA did not contain a factual summary, the facts are derived from the probation officer's report. (Clerk's Transcript on Appeal ("CT") at 126.)

Avenue, failing to stop at a stop sign at the intersection of Prospect Street and Ridge Avenue. The vehicle continued driving eastbound on Ridge Avenue at approximately 50-55 m.p.h. before making another abrupt right turn onto southbound West Washington Street. The vehicle continued on West Washington Street, failing to stop at a stop sign at the intersection of West Washington Street and Ripona Avenue. The vehicle continued traveling southbound on West Washington Street and Key Avenue. As the vehicle entered the intersection of West Washington and Key Avenue, the vehicle's right front passenger, later identified as Keyven Dancy, jumped out of the vehicle and fell to the pavement before standing up and fleeing westbound on Key Avenue on foot. The vehicle then turned left onto eastbound Frontage Road at an extremely high rate of speed. Petitioner lost control of the vehicle, which spun to the left, driving onto a sidewalk on the north side of Frontage Road. The vehicle then spun to the right turning the vehicle completely around. The vehicle was now facing westbound on Frontage Road and continued traveling forward. The vehicle glanced off the left front driver's door of Deputy Bejaran's patrol unit, leaving a small scuff on the door. Petitioner's vehicle then veered right onto Key Avenue, striking a telephone pole head on, stopping the vehicle at the pole. Petitioner got out of the driver's seat and fled on foot.

  Officers from the Modesto Police Department, Stanislaus County Sheriff's Department and the Ripon Police Department responded and set up a perimeter. The Modesto Police Department located a small caliber handgun, a Denver Broncos hooded cap, checkbook and a compact disc case in the middle of the southbound lane of West Washington and Frontage Road. Approximately 15 minutes later, dispatch advised they had received a telephone call from a resident reporting a suspect was hiding in the tall grass in the backyard of 526 Key Avenue. Petitioner was located at that address, arrested, and returned to the scene of the accident. Approximately 10 minutes later another resident located Keyven Dancy lying under a fence board in the backyard of 717 Ripona Avenue. Victim Pena was transported to Ripon where an in-field lineup was conducted with Petitioner and Keyven Dancy. Pena positively identified Petitioner as being the subject who carjacked her car from the front of the 7-11 earlier in the evening. Petitioner was arrested and booked into the Stanislaus County Jail.

**DISCUSSION**

**I. Jurisdiction**

Relief by way of a petition for writ of habeas corpus extends to a person in custody pursuant to the judgment of a state court if the custody is in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a); 28 U.S.C. § 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 fn.7 (2000). Petitioner asserts that he suffered violations of his rights as guaranteed by the U.S. Constitution. In addition, the conviction challenged arises out of the Stanislaus County Superior Court, which is located within the jurisdiction of this court. 28 U.S.C. § 2254(a); 2241(d). Accordingly, the Court has jurisdiction over the action.

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its enactment. Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy, 521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment). The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its provisions.

**II. Legal Standard of Review**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

The instant petition is reviewed under the provisions of the Antiterrorism and Effective Death Penalty Act which became effective on April 24, 1996. Lockyer v. Andrade, 538 U.S. 63, 70 (2003). Under the AEDPA, an application for habeas corpus will not be granted unless the adjudication of the claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C. § 2254(d); see Lockyer, 538 U.S. at 70-71; see Williams, 529 U.S. at 413.

1    As a threshold matter, this Court must "first decide what constitutes 'clearly established
2 Federal law, as determined by the Supreme Court of the United States.'" Lockyer, 538 U.S. at 71,
3 *quoting* 28 U.S.C. § 2254(d)(1).  In ascertaining what is "clearly established Federal law," this Court
4 must look to the "holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time
5 of the relevant state-court decision." Id., *quoting* Williams, 592 U.S. at 412. "In other words, 'clearly
6 established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by
7 the Supreme Court at the time the state court renders its decision." Id.

8    Finally, this Court must consider whether the state court's decision was "contrary to, or
9 involved an unreasonable application of, clearly established Federal law." Lockyer, 538 U.S. at 72,
10 *quoting* 28 U.S.C. § 2254(d)(1). "Under the 'contrary to' clause, a federal habeas court may grant the
11 writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a
12 question of law or if the state court decides a case differently than [the] Court has on a set of
13 materially indistinguishable facts." Williams, 529 U.S. at 413; see also Lockyer, 538 U.S. at 72.
14 "Under the 'reasonable application clause,' a federal habeas court may grant the writ if the state
15 court identifies the correct governing legal principle from [the] Court's decisions but unreasonably
16 applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

17    "[A] federal court may not issue the writ simply because the court concludes in its
18 independent judgment that the relevant state court decision applied clearly established federal law
19 erroneously or incorrectly.  Rather, that application must also be unreasonable." Id. at 411.  A
20 federal habeas court making the "unreasonable application" inquiry should ask whether the state
21 court's application of clearly established federal law was "objectively unreasonable." Id. at 409.

22    Petitioner has the burden of establishing that the decision of the state court is contrary to or
23 involved an unreasonable application of United States Supreme Court precedent. Baylor v. Estelle,
24 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the states,
25 Ninth Circuit precedent remains relevant persuasive authority in determining whether a state court
26 decision is objectively unreasonable.  See Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th
27 Cir.1999).

28    AEDPA requires that we give considerable deference to state court decisions. The state

court's factual findings are presumed correct, 28 U.S.C. § 2254(e)(1), and we are bound by a state's interpretation of its own laws. Souch v. Schaivo, 289 F.3d 616, 621 (9th Cir.2002), *cert. denied*, 537 U.S. 859 (2002), *rehearing denied*, 537 U.S. 1149 (2003).

Application of these standards is significantly impeded where, as here, the state court supplies no reasoned decision. Delgado v. Lewis, 223 F.3d 976, 981 (9th Cir.2000). Under such circumstances, the Court independently reviews the record to determine whether the state court clearly erred in its application of Supreme Court law. Delgado v. Lewis, 223 F.3d 976, 982 (9th Cir.2000) ("Federal habeas review is not de novo when the state court does not supply reasoning for its decision, but an independent review of the record is required to determine whether the state court clearly erred in its application of controlling federal law."); see also, e.g., Greene v. Lambert, 288 F.3d 1081, 1089 (9th Cir.2002).  That is, although the Court independently reviews the record, it still defers to the state court's ultimate decision.

**III.  Review of Petition**

**A.  Ground One**

Petitioner first complains the trial court abused its discretion in failing to investigate his claim that he had a conflict of interest with his trial counsel. He alleges he requested that counsel file a motion for a pretrial lineup but counsel failed to do so. He also believed counsel had a conflict of interest because one of the attorneys who had represented him had a prior association with the District Attorney's Office.

This claim was presented in a petition for writ of habeas corpus to the California Supreme Court on November 21, 2006. (LD-17.) It was summarily denied on May 16, 2007. (LD-18.) Because the state court supplied no reasoned decision, this Court must independently review the record to determine whether the California Supreme Court clearly erred. Delgado, 223 F.3d at 982.

The conflict of interest issue first came to the trial court's attention during a pre-trial hearing. See Petitioner at 5B. Petitioner had informed the court he wasn't ready to proceed because he had never been given the lineup he had requested of his attorney. A Marsden[3] hearing was held on

---

[3] People v. Marsden, 2 Cal.3d 118, 124 (1970).

September 24, 2002, to address Petitioner's concerns. (LD-17 at Exhibit D.) Petitioner's counsel, Steven Foley, stated he had made several requests for a lineup; however, the District Attorney opposed his requests because Petitioner's appearance had changed. (LD-17 at Exhibit D, p. 33.) Mr. Foley also stated that another attorney who had assisted him in representing Petitioner made a motion to the court during pretrial to hold a lineup, but the motion was denied. (LD-17 at Exhibit D, p. 34.) The trial court responded as follows:

> THE COURT: Mr. Fosselman, I don't find any breakdown of attorney-client privilege. A lot of things you talk about are things for the attorney to make a determination of whether it's proper to do so.
>
> Quite frankly, the denial of the lineup in the situation as outlined by Mr. Foley on this matter is not something that would surprise me if the Court says no, you don't get a live lineup, just because you ask for something doesn't mean that you get it.
>
> There isn't any basis that I have been told for any 1538.5 matter.
>
> He's doing everything he can for you. He keeps trying to delay this, and trying to get a continuance this morning, and I've denied that. He's preserving all your rights on the priors. He's doing the best job he can for you.
>
> Marsden motion is denied.

(LD-17 at Exhibit D, pp. 37-38.)

As to the conflict of interest between Petitioner and Attorney Hillenbrand, as Respondent points out the trial court was well aware that Mr. Hillenbrand was a former deputy district attorney. Nevertheless, the court found no basis for a conflict of interest.

In Schell v. Witek, 218 F.3d 1017, 1024 (9th Cir.2000) (en banc), the Ninth Circuit examined the constitutionality of a state court's handling of a motion to substitute appointed counsel based on allegations of an irreconcilable conflict. The Ninth Circuit noted that "it is well established and clear that the Sixth Amendment requires on the record an appropriate inquiry into the grounds for [a motion for new counsel], and that the matter be resolved on the merits before the case goes forward." Id. at 1025, citing Smith v. Lockhart, 923 F.2d 1314, 1320 (8th Cir.1991). In this case, an inquiry was held into the grounds for Petitioner's Marsden motion. Petitioner was given an opportunity to explain his conflict to the court. He did so, and the court then heard from defense counsel. On the subject of the lineup, counsel stated he had made requests as Petitioner had asked, but the requests were opposed by the district attorney. Counsel also stated that an assisting attorney presented the

request in court, but the court denied the motion. The court was also aware that Mr. Hillenbrand had previously been associated with the District Attorney's Office; nevertheless, the court found no evidence of a conflict of interest. After hearing from Petitioner and his counsel, the court found no evidence of a conflict of interest and denied Petitioner's motion for new counsel. Therefore, an appropriate and complete inquiry was made into Petitioner's motion.

Moreover, Petitioner has completely failed to demonstrate that his conflict with his attorney "had become so great that it resulted in a total lack of communication or other significant impediment that resulted in turn in an attorney-client relationship that fell short of that required by the Sixth Amendment." Schell, 218 F.3d at 1026; Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). Accordingly, Petitioner's constitutional rights were not violated. The state court did not clearly err in its application of Supreme Court precedent. Delgado, 223 F.3d at 982. The claim should be denied.

**B. Ground Two**

Petitioner next claims defense counsel rendered ineffective assistance of counsel in violation of his constitutional rights under the Sixth and Fourteenth Amendments. He asserts his counsel and the defense team conducted no investigation whatsoever, failed to file any pretrial motions, failed to interview any witnesses, failed to visit the crime scene, and failed to investigate the prior convictions.

As with his first claim, this claim was presented in a habeas petition to the California Supreme Court where it was summarily rejected without a reasoned decision. In such circumstances, the federal court must determine whether the state court clearly erred in applying Supreme Court law.

*1. Strickland Standard*

The law governing ineffective assistance of counsel claims is clearly established for the purposes of the AEDPA deference standard set forth in 28 U.S.C. § 2254(d). Canales v. Roe, 151 F.3d 1226, 1229 (9th Cir. 1998.) In a petition for writ of habeas corpus alleging ineffective assistance of counsel, the court must consider two factors. Strickland v. Washington, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). First, the petitioner must show that counsel's performance was deficient, requiring a showing that counsel made errors so

serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment. Strickland, 466 U.S. at 687.  The petitioner must show that counsel's representation fell below an objective standard of reasonableness, and must identify counsel's alleged acts or omissions that were not the result of reasonable professional judgment considering the circumstances. Id. at 688; United States v. Quintero-Barraza, 78 F.3d 1344, 1348 (9th Cir. 1995).  Judicial scrutiny of counsel's performance is highly deferential.  A court indulges a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Strickland, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064 (1984); Sanders v. Ratelle, 21 F.3d 1446, 1456 (9th Cir.1994).

Second, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result ... would have been different," 466 U.S., at 694. Petitioner must show that counsel's errors were so egregious as to deprive defendant of a fair trial, one whose result is reliable.  Strickland, 466 U.S. at 688.  The court must evaluate whether the entire trial was fundamentally unfair or unreliable because of counsel's ineffectiveness.  Id.; Quintero-Barraza, 78 F.3d at 1345; United States v. Palomba, 31 F.3d 1356, 1461 (9th Cir. 1994).

A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the petitioner as a result of the alleged deficiencies.  Strickland, 466 U.S. 668, 697, 104 S.Ct. 2052, 2074 (1984).  Since the defendant must affirmatively prove prejudice, any deficiency that does not result in prejudice must necessarily fail. However, there are certain instances which are legally presumed to result in prejudice, e.g., where there has been an actual or constructive denial of the assistance of counsel or where the State has interfered with counsel's assistance.  See Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S., at 659, and n. 25, 104 S.Ct., at 2046-2047, and n. 25 (1984).

Ineffective assistance of counsel claims are analyzed under the "unreasonable application" prong of Williams v. Taylor, 529 U.S. 362 (2000).  Weighall v. Middle, 215 F.3d 1058, 1062 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [United States Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  Williams, 529 U.S. at 413.  The habeas corpus applicant bears the burden to show that the state court applied United States

Supreme Court precedent in an objectively unreasonable manner.  Price v. Vincent, 538 U.S. 634, 640 (2003).

### *2.  Analysis of Claim*

The claim is without merit. The transcripts of the Marsden hearing reveal that defense counsel's representation did not fall below an objective standard of reasonableness. He or members of his defense team met and conferred with Petitioner on several occasions. Requests were made for a lineup but opposed by the district attorney or denied by the trial court. Copies of materials requested by Petitioner were made available to him as soon as possible. Counsel also determined a motion to suppress evidence that was requested by Petitioner was inappropriate in light of the facts of the case. The trial court summarized counsel's representation by stating: "He's doing everything he can for you. . . . He's preserving all your rights on the priors. He's doing the best job he can for you." (LD-17 at Exhibit D, p. 38.) In addition, Petitioner fails to demonstrate any prejudice resulting from counsel's alleged errors. He does not show how the outcome of the trial would have been any different if counsel had not committed the errors he alleges.

Petitioner's claim that counsel failed to call witnesses is also meritless. In presenting a claim of ineffective assistance based on counsel's failure to call witnesses, Petitioner must identify the witness, U.S. v. Murray, 751 F.2d 1528, 1535 (9th Cir. 1985), show that the witness was willing to testify, U.S. v. Harden, 846 F.2d 1229, 1231-32 (9th Cir. 1988), and show that the witness's testimony would have been sufficient to create a reasonable doubt as to guilt. Tinsley v. Borg, 895 F.2d 520, 532 (9th Cir. 1990); see also United States v. Berry, 814 F.2d 1406, 1409 (9th Cir. 1989) (holding that where defendant did not indicate what witness would have testified to and how such testimony would have changed the outcome of the trial, there can be no ineffective assistance of counsel). Here, Petitioner fails to identify any witnesses who would have testified favorably for the defense. His claim is entirely speculative and should be rejected.

Finally, Petitioner's claim that counsel failed to investigate his prior convictions must also be denied. Petitioner fails to demonstrate how any of the allegations of priors he was determined to have suffered were legally flawed or inaccurate. Petitioner does not show how any further investigation into these priors would have altered the trial court's conclusion that Petitioner was in

1  fact the individual who was determined to have suffered those convictions. A review of the record
2  reveals defense counsel did not perform unreasonably during the court trial on the priors. Defense
3  counsel argued strenuously to strike one of the priors, but the court rejected his argument.
4       Petitioner has not demonstrated that counsel erred or that but for the alleged errors the
5  outcome of the trial would have been different. The California Supreme Court did not clearly err in
6  its application of Strickland.
7       **C.  Ground Three**
8       In his third and final claim, Petitioner alleges appellate counsel provided ineffective
9  assistance by failing to raise the above grounds for relief on direct appeal. Like the first two claims,
10 this claim was raised in a habeas petition to the California Supreme Court and rejected without
11 comment.
12      Effective assistance of appellate counsel is guaranteed by the Due Process Clause of the
13 Fourteenth Amendment. Evitts v. Lucey, 469 U.S. 387, 391-405 (1985).  Claims of ineffective
14 assistance of appellate counsel are reviewed according to Strickland 's two-pronged test. See, e.g.
15 Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir.1989);  United States v. Birtle, 792 F.2d 846,
16 847 (9th Cir.1986).  A defendant must therefore show that counsel's advice fell below an objective
17 standard of reasonableness and that there is a reasonable probability that, but for counsel's
18 unprofessional errors, defendant would have prevailed on appeal.  Miller, 882 F.2d at 1434 & n. 9
19 (citing Strickland, 466 U.S. at 688, 694; Birtle, 792 F.2d at 849).  However, appellate counsel does
20 not have a constitutional duty to raise every nonfrivolous issue requested by defendant. Jones v.
21 Barnes, 463 U.S. 745, 751-54 (1983);  Miller, 882 F.2d at 1434 n. 10.  The weeding out of weaker
22 issues is widely recognized as one of the hallmarks of effective appellate advocacy. Id. at 1434
23 (footnote and citations omitted).  As a result, appellate counsel will frequently remain above an
24 objective standard of competence and have caused her client no prejudice for the same
25 reason--because she declined to raise a weak issue. Id.
26      As discussed above, the claims Petitioner claims appellate counsel should have raised on
27 direct appeal are completely without merit. Thus, Petitioner cannot demonstrate error on the part of
28 appellate counsel for failing to raise these issues, or any prejudice resulting therefrom. The

California Supreme Court did not clearly err, and this claim should therefore be rejected as well.

## RECOMMENDATION

Accordingly, the Court RECOMMENDS that the petition for writ of habeas corpus be DENIED. It is FURTHER RECOMMENDED that the Clerk of Court be DIRECTED to enter judgment for Respondent.

This Findings and Recommendation is submitted to the Honorable Lawrence J. O'Neill, United States District Court Judge, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days (plus three days if served by mail) after being served with a copy, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   October 14, 2008             /s/ Gary S. Austin
                                      UNITED STATES MAGISTRATE JUDGE